Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. We're very pleased to be with you this morning. We have four matters that were on the argument calendar that have been ordered submitted on the briefs, Singh versus Barr, and Vazquez-Pineda versus Barr, Orellana versus Barr, and Ceballos versus Barr. That leaves us two matters on the oral argument calendar, which we will take in the order in which they appear. We'll begin with Breck versus Doyle. For the information of counsel, if you're not familiar with our system, the time showing on the clock is your total time. For example, Mr. Breck, if you would like to reserve time for rebuttal, then you need to monitor your own time and stop at eight minutes if you want two minutes for rebuttal. All right, Mr. Breck, at the podium, please. All right, Your Honors, I'm the first time presenting anything in the Ninth Circuit, and so I probably managed to really screw up the whole thing. What I had intended to do here was to present the four most significant, to me, issues that I believe is in front of the Court. That turned into, however, an 11- or 12-page dissertation, which is more than can be read in the 10 minutes that's allowed. So I'm going to have to hit just the highlights, but my question is. Why don't you start with what you think is the most important issue or the most important defendant that you want to challenge here? It's the most important issue that I started with here is the claim that the State Bar of Nevada is somehow a state agency. Now, Mr. Breck, hasn't that been decided by this Court? I can't see where you have decided that. Didn't we decide that in the Hirsch case? In 1995, a case involving the State Bar of California. State Bar of California, but it wasn't? But what's the difference between the State Bar of California and the State Bar of Nevada for purposes of that legal principle? Probably a whole lot of things, because the State Bar of California gets a lot of funding from the state's revenues. The Nevada Bar gets no money whatsoever from the State of Nevada. It gets, it has currently $12.5 million in value. It has collected and continues to collect $7.5 million plus every year, all from revenues from the people who are signing up to the members of the bar. Now, so that's one. Whether the money judgment would be satisfied under state funds, the answer appears to me to be no, it wouldn't. Not with that amount of assets and revenues available. The second is whether the entity performs central governmental functions. Mr. Breck, can you speak up just a little bit? Pull the microphone just a little bit closer, please. Oh, I thought I was yelling into it. So let me try here a little closer. Better? That's a little bit better. Little bit better. I don't want to swallow it, but OK. Anyway, the second test is supposed to be whether the entity performs a central government function. I couldn't find any central government functions that the State Bar of Nevada does, other than enrolling people who want to be in the State Bar. They don't even get to decide that issue. It goes instead to the Supreme Court to make the decision. They get to do a recommendation. That's all. The same thing with people that they don't want there anymore. They want to get rid of them for some reason, whether it's bad acting or whatever it is. Now, you're not challenging the disbarment or trying to set that aside, is that correct? No. That is correct, because the State of Nevada, the Supreme Court, decided that I'm disbarred. There's no changing that. But if that is unchallenged, then how do you have standing to challenge any injury that may flow from that disbarment? I don't even know how to begin to answer that question. That's been the whole drafting problem all the way through from the very first time I filed this lawsuit. But it really didn't come up in terms of the state agency thing until the briefing was being done on the opposition side in this court. So I didn't really get to, I didn't have what I saw as the opportunity to respond the way I'm trying to do now. You filed a motion to dismiss that raises that issue. What is your response as to why you think they're wrong? I think they're wrong if there is a case that this court has decided. I didn't find anything where the Mitchell tests were being met here, and maybe I didn't find the right case. But that was what I did not find. And as a result, I put these things as the four or five things at the top of the list that are the most important thing to be addressing, I think, in this case. But you're kind of approaching this from a different angle. And I'm not sure what that angle actually means to me. If the court is looking at the Mitchell requirements and saying, well, this state bar is no longer, even if it did once, meeting these five conditions, I don't know. That's something that this court, I think, still has to address. But everything here is up to you, and I know that. And I've gone through all five of these, not yet saying them to you. But the entity performs some central government functions. The only thing I could see is setting up who's passed the bar and who they think is going to be a workable lawyer. Then they pass that to the Supreme Court and say, yes, we're going to recommend this person to be admitted. It seems to me that all of your arguments are going to the state bar of Nevada. Is that correct? That is the most important issue, I think, that we're still facing here. And so what are you going to do? The 11th Amendment, you know, precludes your claims against the state of Nevada, right? Correct. Only if. Our case of O'Connor versus Nevada says that the Nevada Supreme Court and the state bar of Nevada are arms of the state and are entitled to the immunity under the 11th Amendment. That's a Nevada case. So how are you going to deal with that? I don't think I found that case. So that may be where the problem is. It's case C-686, Fed 2nd, 749. OK. It's a Ninth Circuit, 1982 case. It specifically says that Nevada Supreme Court and the state bar of Nevada are arms of the state of Nevada, entitled to immunity under the 11th Amendment. There's no question in my mind that the state Supreme Court fits into that category. But the state bar is not being treated that way. Has never apparently been treated that way. And so I don't know whether the court wants to take another look at that or not. If you do not, then this issue, I just put it aside. OK. Have you got any other issues? Yes. The second issue that I had is their quasi due process and open meeting law violations. And most of them are open meeting law violations that, according to the Nevada open meeting law, of which there are a number of cases decided by the Nevada Supreme Court, that say that yes, it applies, and yes, they have to comply with it. How is that actionable under Section 1983? Section 1983 generally covers violations of the Constitution, violation of a statutory open meeting law requirement wouldn't be a violation of the Constitution. The open meeting law is supposed to be enforcing the Constitution, including its various actions. Are you alleging that it's a due process violation for a state to violate its own open meeting laws? Yes. Why? Because that's, when we go to the, did you raise the question of the open meeting laws before the Nevada Supreme Court or in any proceeding before the state bar? I did not go back and look at those in detail. I don't remember at this point. And I'm 76 years old, and my memory is sometimes not as good as it should be. But that's where I just didn't go back and look at it. Mr. Reck, you have 30 seconds left. Would you like to save some time for rebuttal? I guess so. The third item on the list was the decision by the executive director to terminate the multi-jurisdictional activity of the state bar, or of the TPI law firm, which I just heard. Mr. Reck, if you'd like to save some time for rebuttal, then you'll need to sit down now. OK. Thank you, sir. Colonel Stern. Good morning, Your Honors. I represent the Nevada Supreme Court. Counsel for the state bar and the individual defendants is also here. I anticipate that he'll take up most of the time, but I'm here to answer any questions that you have with regard to the Nevada Supreme Court. As Mr. Breck has essentially conceded, the 11th Amendment protects the state from suit in this case. There's no real question as to the Nevada Supreme Court's status as a state entity, an arm of the state. There's no abrogation in 1983 permitting the suit to go forward, and Nevada has not waived its immunity. As a result, Nevada was properly dismissed from this case. And there are a couple of exceptions that arose in the briefing that I'm sure Your Honors are aware of, which is there can be a suit against individuals in the state government, but here the individual justices are not named. It's just the Nevada Supreme Court. And in addition, there's no ongoing behavior here that could be challenged. And so I would submit that the district court's decision on this issue should be affirmed on behalf of the state and Nevada Supreme Court. Are there any questions? I don't. Thank you. Thank you. Let's do good now. We're good now with the firm of Parsons, Bailey, and Latimer appearing on behalf of the state bar and the individuals in this appeal. I'm going to begin by addressing very, very briefly the justiciability issue. Your Honor, you have a question. I just want to address first the disposition of the individual defendants on state immunity grounds. Mr. Brecht cited the Wallace versus Spencer case in which we held immunity under Section 1983 is governed by federal law. State law cannot provide immunity from suit for federal civil rights violations. He didn't quote that language, but he did reference the holding and this case, and it was not mentioned in either of the red briefs. It seems to establish that the district court was wrong on this point, and thereby raises the question of whether there's some other ground on which you can avoid a remand. Well, I looked at that, Your Honor, and if you look at Pacman and other cases, they don't say that state law immunities don't apply to 1983 cases. What they say is that when 1983 was enacted in 1871, it brought with it all other immunities that might apply, and you see these applied from time to time, even in prosecutor cases. So that's a matter of federal law. Well, it recognized immunities as a matter of federal law based on that historical tradition, but this was not a dismissal on federal law immunity grounds. It was a state rule, and it seems inconsistent with the language I just read. It's under SCR, Nevada Supreme Court Rule 106, which provides for immunity of participants in a judicial process, in the judicial process that is referenced in the local district courts, US district courts rules itself, local rule IA11-7, says that practice before the district court is going to be governed by our rules of conduct. And so how can Nevada exempt certain state officials from liability under federal law? Well, there does seem to be just a flat violation of the Supremacy Clause, and let me give you the harder case. If we adopted the principle that you're advocating here, and the judge do decided this on, then what would prevent Nevada from simply adopting some kind of immunity rule for all of its peace officers? Yeah, I get your point, Your Honor, and I think that that is the important distinction here. Nevada couldn't simply adopt an act that says, we have, our officials have immunity from Section 1983 actions. That's addressed in the case that was mentioned earlier. But what Section 1983 did not abrogate is the common law immunities, which SCR-106 simply codifies. Then maybe you ought to talk about the common law immunities rather than the statutory immunity. So what common law immunities do you have for the officials? So all of the participants, and all of these individuals. Before you get to that, is there anything in your briefs that talked about the common law immunities? We did not discuss the common law immunities at length. Did the district court ever talk about the common law immunities? The district court only referenced SCR-106. That's correct, Your Honor. So therefore, it seems to me that if you're even going to argue that, that would be a little bit out of whack, wouldn't it? You kind of waived that. Well, no. Our brief does say, we do say in the brief that SCR simply incorporates the common law immunities. But we don't discuss them at length. You don't make the argument. So why shouldn't I send that back to Judge Dew and say, if they want to argue common law immunities, take some evidence, and let's see if there are any. You know, Your Honor, that's something, certainly, the court could do. But I think it's- Why wouldn't we do? I think it is- It's certainly going to be a fact question. It isn't something that a guy can determine only on a question of law. Well, the briefing in this case was difficult, because we have a pro se litigant. And so this wasn't- this argument was not made below that the SCR immunity was not available. And the reason- You put it out on appeal, though, because you cited the Wallace case. Do you have any alternative ground that would block a remand and that would allow an affirmance? Do you think standing provides a basis for doing that? And if so, why? I do. I do think that you have to look very carefully on appeal at what was pled in the complaint. And there aren't any individual claims pled in the second amended complaint against the individuals. And that's the only instance in which the immunity argument arises, is the claim for damages against the individuals. Because as the court has already indicated, the court's precedent on 11th Amendment immunities extends to the individuals acting in their official capacity. They're going to have claims against the individuals, and not just for injuries arising from the disbarment, but also for injuries that he alleges arose from the actions against the law firm and in the course of the proceedings, because of the actions to the law firm. Why does he not have standing to raise those claims? The law firm is not an appellant. When Mr. Breck is an appellant, the law firm was a separate corporation. Mr. Breck was never admitted personally in Nevada under any provision. There was a firm, the TPI, which was not even really a law firm. It was alleged to be a nonprofit corporation, which was adjudicated before the disciplinary panel to have been a false assertion. But TPI was admitted briefly as a multi-jurisdictional practice. It had, for a brief period of time, responsible Nevada lawyers who were licensed in Nevada, none of whom were Mr. Breck. And again, it's not an appellant. You're suggesting that there may be valid defenses to those claims, but why would that not even state an Article III injury, which you claimed in your joiner in the motion to dismiss? The major reason why it wouldn't is it's not pled. We have to look very carefully at what Mr. Breck pled versus what he's argued on appeal. He never pled a claim against the individuals. He mentions individuals in the complaint, but he doesn't make any kind of approach at a prima facie argument at a damages claim against any of those individuals. There are three claims in the complaint, and time permitting, I could go through them. But none of them state a claim, no state of mind, no damages relating to the individual's actions, nothing like that. He simply says these individuals. He has listed the individuals and named them in their individual capacity. He has listed them. He has said they're named in their individual capacity, has not pled any claim against them in any of the three claims in the second amended complaint, which is the operative complaint. Is that just an Iqbal Twombly argument? I mean, because they're named. He says they're in the individual capacity. And in the counts, he actually references names of persons in the counts as they're pleaded. He does. And none of those counts state an injury cognizable under the Constitution or federal law against Mr. Breck that is the responsibility of any of those individuals. It simply says what they do and what their role was. That's it. And the identifying provisions on the first page. But what did he need to say? I mean, it seems to me that what he's really saying is, I own this corporation. You defunct this corporation. You put it out of business. I get damages as a result thereof. And as a result of that, as a result thereof, he gets standing because he has some injury. What did he need to say more that he didn't say? Because he's saying, this guy did this. That made it so that my corporation went defunct. This guy did this. That made it so my corporation went defunct. And I'm injured. I'm economically injured thereby. What more does he need to say? He needs to allege a claim under Section 1983 that some federal law was violated by the Administrative Act of the multi-jurisdictional practice no longer being recognized under Nevada law. That's an issue that he should have taken up. That's a Nevada law issue. It's not the regulatory standing. It doesn't raise to a 1983 issue? Is that what you're saying? Right. It's a Nevada issue. And under the Brown case, this court has recognized that the regulation of the bar and discipline of the bar is a state function. What Mr. Brick did here is he started out to try to get around the district court's application of the Rooker-Feldman doctrine by pleading claims against individuals, sort of mentioning individuals. And so he sort of waved that around over here. But what he's really done on appeal, then, is gone back and done what he would have been barred by Rooker-Feldman from having done in the district court. And it tried to attack the process. That's the overarching context that we have to place this case in. OK. You've exceeded your time. Thank you very much, Mr. Goodenow. Thank you, Your Honor. Mr. Brick, I'll give you some time to respond. Your Honor, if we go back and we look at the first amended and then the second amended complaint, I think you'll find that there's more detail there than what counsel has been relating to. Why do we go to the first amended complaint when you've amended it? Why do we go to the complaint filed when you've amended it? Don't we look at your amended complaint and determine where you're going? We don't have to look at the first complaint, do we? There is a first complaint, yes. I know, but why do we have to look at it if you've amended it? You probably don't have to, because the second amended was supposed to be filling in the gaps that existed on the first complaint. So I mean, that should be the second one that you're looking at. So in the second amended complaint, are you suing on behalf of yourself as an individual as opposed to a corporation? Yes. I don't have standing to be suing on behalf of the corporation. If the state bar was dealing, was the state bar dealing with you personally or was it dealing with your law firm? Everything that the state bar did against me was aimed at me to get me out of being able to help the people that are facing foreclosures and that we were doing very successful. We had around 60 cases filed, and they didn't win all those cases. Most of them got removed to federal court and dismissed on faulty grounds. Since you weren't a member of the Nevada State Bar, what jurisdiction would the Nevada State Bar have over you? When I filed for TPI and myself, the multi-jurisdictional practice form, I submitted at that point to the jurisdiction of the state bar. The bar can't discipline you because you're not a member of the bar. No, they just decided to kill the entire thing. Right, but they killed a corporation. They did, and they did it improperly. The rule says that if the state bar of Nevada concludes that we have violated the rule. When you brought your 1983 suit, you brought it only on your own behalf as an individual and not on behalf of your firm. It was me they put out of business, and by putting me out of business, taking away everything, that pretty much killed everything. Now, the Nevada State Bar did bar you from ever appearing again in Nevada. Yes. Does that give you sufficient standing to bring the suit? I think so, for damages, if nothing else. But the damages don't have to be huge. Quite frankly, if I am fortunate enough to be able to get back into the district court, produce the evidence that I know exists, because I've spent years putting it all together, and it's mostly sitting in Reno in a big, one of those places where you store things, so a storage holder. But I mean, the documents are there. And we had 60 out of something like 120 cases that we had taken into the TBI. Roughly 60 of those were filed in state court, removed to federal court, dismissed in federal court incorrectly. But by then, our friend Patrick King had scared all of the attorneys from ever talking to me. OK, Mr. Breck, I think we're sort of well beyond the scope of the argument. You've exceeded your time, so. All right. Thank you. Thank you. We thank counsel for the argument. The case of Breck versus Doyle is submitted.
judges: Bybee, N.R. Smith, Collins